United States District Court
District of Minnesota
Civil No. 18-2824 (DSD/BRT)

Catherine Dahlberg,

    Plaintiff,

v.                                    ORDER

Radisson Blu Mall of America,

    Defendant.

    Catherine Dahlberg, Lot 2304, P.O. Box 17370, St. Paul, MN 55117, plaintiff pro se.

    Alec J. Beck, Esq. and Ford & Harrison LLP, 150 South Fifth Street, Suite 3460, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Radisson Blu Mall of America. After a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This employment dispute arises out of Radisson's decision to terminate pro se plaintiff Catherine Dahlberg's employment. Radisson hired Dahlberg as a front office representative on September 7, 2016. Dahlberg was responsible for checking guests in and out of the hotel and fielding guest questions and comments.

On October 12, 2016, a guest asked Dahlberg if she was from China. Dahlberg Dep. at 143:17-44:4. Dahlberg felt that the guest's manner and tone were threatening. Id. at 145:24-25. Dahlberg told the guest that she was not comfortable answering the question. Beck Aff. Ex. 5 at 1. The guest then asked where in China Dahlberg was from. Id.; Dahlberg Dep. at 158:20-21. Dahlberg responded that she did not want to answer the question. Beck Aff. Ex. 5. The front desk supervisor, Tee Phan, observed the exchange and noticed that the guest appeared to be shocked by Dahlberg's response. Id.; Dahlberg Dep. at 159:15-19. Phan then asked Dahlberg to discuss the matter in her office. Phan Aff. ¶ 3; Dahlberg Dep. at 161:12-16.

Dahlberg explained that she did not want to engage guests in discussions about personal matters but felt she had been cordial to the guest. Beck Aff. Ex. 5 at 1. Phan advised Dahlberg that engaging in small talk is part of working in the hospitality industry and that she needed to respond to guest questions in a friendlier manner. Id. Phan offered to help Dahlberg craft appropriate responses to guest questions that may make her uncomfortable. Id. at 2. Phan felt that Dahlberg was defensive during their meeting and that it was ultimately unproductive. Id.; Phan Aff. ¶ 4. Dahlberg returned to work after meeting with

Phan and completed her shift. Dahlberg Dep. at 171:8-11. Phan reported the incident to Liisa Soulak, director of guest services. Phan Aff. ¶ 4.

The following day, Dahlberg reported to work, but requested the day off because she was still upset from the guest interaction the previous day. Dahlberg Dep. at 171:12-72:16; Kam Aff. ¶ 4. Human resources director Jennifer Wroe provided Dahlberg with an employee assistance number so she could set up counseling sessions to work through her distress over the incident. Dahlberg Dep. at 176:25-77:9; Beck Aff. Ex. 6 at 1.

When Dahlberg reported to work on Friday, October 14, Wroe asked her to meet in Wroe's office. Wroe Aff. ¶ 4; Dahlberg Dep. at 95:19-96:14, 175:4-23. The meeting did not go well. Wroe and Soulak, who was also present, were trying to determine whether Dahlberg could return to her duties, but Dahlberg would not confirm whether she was able to do so. Wroe Aff. ¶ 4; Beck Aff. Ex. 6 at 1. Dahlberg told them that the guest interaction on October 12 as "the most stressful ten seconds of her life." Wroe Aff. ¶ 4; Beck Aff. Ex. 6 at 1; Dahlberg Dep. at 184:2-8. She mimicked the guest involved in the incident and, according to Wroe, became loud and angry when doing so.[1] Wroe Aff. ¶ 5; Beck Aff. Ex. 6 at 1;

---

[1] Wroe's account is corroborated by another employee in a

3

Dahlberg Dep. at 186:13-87:5. Dahlberg denies being upset but admits telling Wroe and Soulak that if they wanted to see her loud and aggressive, "she would show them." Dahlberg Dep. at 187:17-20; Wroe Aff. ¶ 6. She also said that she is not "soft spoken like white people." Dahlberg Dep. at 188:11-13.

Wroe reported that Dahlberg seemed confused and acted strangely during the meeting. Wroe Aff. ¶¶ 4-6. She took several breaks, which did not seem to help. Id.

According to Dahlberg, Wroe was hostile towards her during the meeting and told her that her "race is the reason" Wroe can treat her "like that" and that she could "treat [Dahlberg] poorly without consequences." Beck Aff. Ex. 2 at 8. At her deposition, however, Dahlberg admitted that Wroe "did not specifically use that wording" or reference Dahlberg's race or national origin. Dahlberg Dep. at 188:18-93:22. Dahlberg also admitted that Wroe did not tell Dahlberg that she could treat her "poorly." Id. at 194:15-19. Although Dahlberg alleges that "hotel managers called [her] names and said all kinds of mean things about [her] national origin," Compl. at 7 ¶ 4, she could not recall any specific

---

nearby office who could hear that Dahlberg was distressed and became concerned that security may need to be involved. Beck Aff. Ex. 6 at 2. She stationed herself outside of Wroe's office in case assistance was needed. Id.

discriminatory statements. Dahlberg Dep. at 203:1-09:23.

Wroe ultimately offered Dahlberg the weekend off to regroup. Wroe Aff. ¶ 6. Dahlberg refused and left Wroe's office. Id. Wroe then asked Scott Huston, the director of facilities, for assistance.[2] Id.; Huston Aff. ¶¶ 1, 3. Huston found Dahlberg in the break room crying and brought her back to Wroe's office to try to calm her down. Huston Aff. ¶ 4. Huston told Dahlberg that she needed to leave for the day. Id.; Wroe Aff. ¶ 7. According to Dahlberg, however, Huston immediately fired her. Dahlberg Dep. at 214:3-6. She said that he later told her to go home and let the hotel know if she would be able to return to work. Id. at 215:13-16:13.

After being told she needed to go home, Dahlberg cried, used numerous tissues to wipe her face, and threw the tissues on the floor. Wroe Aff. ¶ 7. Dahlberg then announced that she could not feel her hands or feet and that she was having trouble breathing. Id. ¶ 8; Huston Aff. ¶ 5. Huston alerted hotel security personnel, who called the paramedics.[3] Huston Aff. ¶ 5. The Bloomington

---

[2] As director of facilities, Huston oversaw the security, engineering, and information technology departments at the hotel. Huston Aff. ¶ 1.

[3] Dahlberg alleges that at some point Huston tried to knock her down, but she testified that although he approached her quickly, he stopped before he reached her. Dahlberg Dep. at

police and paramedics arrived a short time later and attempted to escort Dahlberg from the hotel. Id. ¶ 6. Dahlberg refused to leave the hotel for approximately two hours. Id. ¶¶ 6-7. At some point, hotel security asked the police to issue a trespass order. Id. The police did so and ordered the paramedics to take Dahlberg from the premises in the ambulance. Id. Dahlberg was taken to Regions Hospital in St. Paul where she remained for 72 hours on a psychiatric hold. Dahlberg Dep. at 120:21-21:22.

The following Monday, Dahlberg sent an email to Wroe asking if she should return to work. Beck Aff. Ex. 7 at 1-2. Wroe and Soulak called Dahlberg several times over the next few days to discuss matters, but she did not answer the phone. Id. at 1; Beck Aff. Ex. 8. Dahlberg sent an email stating that she preferred to communicate by email. Wroe Aff. ¶ 9; Beck Aff. Ex. 9. Dahlberg explained that did not want to call Wroe or Soulak because she felt it was unsafe to speak with them. Dahlberg Dep. at 129:19-24. She did not explain the reason for her safety concern.

Dahlberg did not report to work the week after the incident, despite having received an email from Radisson advising her of her

---

227:12-29:7. Given Dahlberg's conflicting assertions, the absence of any corroborating evidence, and the fact that Dahlberg has not brought a claim for assault, the court will not consider this allegation in assessing the case.

shifts that week.  Id. at 127:13-28:6, 129:25-30:3.  On November 1, after not hearing from her for two weeks, Radisson terminated Dahlberg effective October 26, 2016.  Beck Aff. Ex. 3.

Dahlberg filed a charge of discrimination with the Minnesota Department of Human Rights, which made a "no probable cause" determination.  See id. Ex. 1 at 7.  She appealed and the decision was affirmed.  Id. at 7-10.

On October 2, 2018, Dahlberg filed this suit alleging that Radisson discriminated and retaliated against her on the basis of race and national origin, in violation of Title VII of the Civil Rights Act of 1964.  She is seeking $3 million in damages. Radisson now moves for summary judgment.[4]

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[4] In addition to filing an opposition to the motion, Dahlberg filed motions to dismiss Radisson's motion.  ECF Nos. 27, 40.  The court will construe Dahlberg's motions as oppositions to Radisson's motion and will consider them accordingly.

7

A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.  Discrimination**

Under Title VII, an employer may not discharge or otherwise discriminate against an employee because of her race or national origin. 42 U.S.C. § 2000e-2(m). Thus, in order to prevail, Dahlberg must show that race and national origin played a part in

Radisson's decision to terminate her.

A plaintiff in an employment action may survive a motion for summary judgment through direct evidence "indicating unlawful discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 863 (8th Cir. 2008). Absent direct evidence of discrimination, a plaintiff may survive a motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Id. at 863-64.

Here, there is no direct evidence of discrimination. Although Dahlberg initially stated that Wroe and others had expressly disparaged her because she is Chinese, she has since retracted those statements and has provided no other direct evidence of discriminatory animus. The court therefore turns to whether Dahlberg has raised an inference of unlawful discrimination.

Under McDonnell Douglas, Dahlberg must first establish a prima facie case of discrimination. 411 U.S. at 802. To meet her

burden, she must show the following: (1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. Fields, 520 F.3d at 864. The burden then shifts to Radisson to articulate a legitimate, nondiscriminatory reason for its actions. See Humphries v. Pulaski Cty. Special Sch. Dist., 580 F.3d 688, 692-93 (8th Cir. 2009). If Radisson does so, Dahlberg then must produce evidence demonstrating that Radisson's reason is pretext for unlawful discrimination. See id. at 693.

Although she is a member of a protected class and suffered an adverse employment action, Dahlberg otherwise has failed to establish a prima facie case of discrimination. First, the record establishes that she was not meeting Radisson's legitimate job expectations. As a front desk representative, Dahlberg was required to interact with hotel guests in a hospitable manner. Her guest interaction on October 12 showed that she needed additional training to meet that expectation. Radisson was willing to train her further to help her succeed, but Dahlberg's subsequent conduct made it clear that she was unable to meet Radisson's expectations. Even leaving the dramatic events of

October 14 aside, Dahlberg's unwillingness thereafter to speak to Wroe or Soulak or to return to work left Radisson with little choice but to terminate her. Indeed, she effectively abandoned her job.

Second, Dahlberg has failed to establish that other similarly situated employees outside of the protected class were treated differently. There is no indication in the record that non-Chinese employees were not required to engage guests in a hospitable manner or were not terminated for failing to report to work for two weeks. Nor is there any indication that Dahlberg's ethnicity was a causal factor in her termination, despite her subjective belief to the contrary. Because the court is satisfied that Dahlberg has failed to meet her burden, Radisson is entitled to summary judgment on her discrimination claim.

**III. Retaliation**

Dahlberg also asserts that Radisson terminated her because she complained about the guest's questions about her ethnicity on October 12. As with a claim of discrimination, in order to establish a prima facie case of retaliation under Title VII, Dahlberg must show that (1) she engaged in protected conduct, (2) a reasonable employee would have found the challenged retaliatory action materially adverse, and (3) there is a causal connection

11

between the two. Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007), abrogated on other grounds by Togerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc).

Dahlberg has failed to meet her burden. Even assuming her October 12 complaint about the guest interaction constitutes protected conduct, Dahlberg cannot establish a causal connection between that complaint and her termination. As explained above, Radisson terminated her due to numerous intervening factors unrelated to her complaint. As a result, the retaliation claim also fails as a matter of law.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment [ECF No. 23] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 9, 2019

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court